10-2640 Hubbard Street Lofts v. Inland Bank All right, yes, I'm sorry. You're both up here. Please, starting with the Appalachian attorney, tell us who you are and who you represent. My name is Anastasios Foukas. I represent Plaintiff's Appellants, Hubbard Street Lofts, and Andrew Rutenberg. Appalee? That's the Plaintiff's Appellant. That's it. That's Appalee. My name is Tom Hardy. I represent Appalee Defendant Inland Bank and Trust. Each side is 15 minutes. You can see from the last case we don't always go to 15 minutes. We'd appreciate it if you guys could because you don't have five issues. I can assure you we've read the record, or rather, the briefs, and we've looked at the pertinent portions of the record. It's a legal issue. We'd appreciate it if you got your strongest points first. Anytime you're ready, Mr. Foukas. Good morning. As I said, my name is Anastasios Foukas, and I represent Andrew Rutenberg and Hubbard Street Lofts LLC. We welcome the opportunity to address this Court's recent decision in Asset Exchange v. First Choice Bank with respect to two of the three reasons why the trial court should be reversed. First, the 365-360 language contained in the payment provision of this note is internally inconsistent, unintelligible, and as such, it renders the remainder of the note ambiguous. Second, Sections 9 and 10 of the Illinois Interest Act do apply to this note, as there are no exceptions to those sections contained anywhere in those sections. Finally, the Illinois Credit Agreements Act does not bar any of the claims of the plaintiffs. Can you explain how RBS does not apply then? The RBS decision with regard to the breach of contract claims contains different language, specifically the RBS language stated that interest shall be computed on the principal balance outstanding from time to time on a basis of 360-day year. In this case, the language is much less clear. Here it says the annual interest rate, not the annual interest. The annual interest rate for this note is computed on a 365-360 basis. That is, again, by applying the ratio of the annual interest rate. But you did leave off half the sentence, right, which is 360-day year, comma, but shall be charged for the actual number of days within the period for which interest is being charged. Absolutely. That's the remainder of the RBS provision. The distinction in the provision. Which means 365 days, right? So it's 360 days, and the next half is, but they have to pay this every day, including 365 days. Agreed. And the language in RBS is distinct because that talks about interest shall be computed, whereas the note here talks about that the annual interest rate shall be computed on a 365-360 basis. And then it uses that same term, annual interest rate, as part of the calculation. So what case law makes that distinction? There's a recent case out of Ohio. It's J&T Properties. In addition, the Eli Enterprises. While I understand that those are not controlling on this court, they're persuasive, the J&T Properties decision, which I have, a 2000L Westlaw site of 2566510. Again, in Ohio. I mean, is that a 2000IL site? It's a 2011 Westlaw site. Can you tell me, is it a reported decision or a non-reported decision? At this point, it's unreported. It was just issued just recently as of, again, a couple months ago. As of the end of June, it was just issued. And, again, I'm not abstaining. There are very few cases in this area that at least are contained in the briefs. But generally, you can't cite those. I'm one of the sticklers. I'm on the Rules Committee, and it's just, I wish we could. The Supreme Court has slapped us down again a few months ago saying, no, you can't do it. Both of those are the same situation, both those cases. The Eli Enterprises case was also a Westlaw citation, correct? Are they both in your brief as well? The Eli Enterprises was the J&T properties came out after a briefing had concluded, and that was exactly where the language that the note, as written, is unintelligible. Because the question that that court presented, and which we would present to the bank and to this court, is, how can you solve for an annual interest rate when you use that term as part of the calculation, unless they are multiplied and divided by the same term, or by the same numbers? In this case, they're not. That in and of itself means that to find for the bank, you must alter the terms of the 365, 360 language that's present in this note. Let me ask a more fundamental question. It may not be right off the cuff. Your client is a sophisticated business person, and the note is pretty short, and I think fairly clear. I'm not a business person. How do you explain the fact that your client signed it directly under a clause attesting that he knew and understood all the terms within the note, and now you're saying that it was ambiguous and nobody could have understood it? Those two things are hard for me to reconcile. Your Honor, the allegation that our client is a sophisticated business person comes solely from the Appellee's brief and their pleadings below. There's no evidence of that he's any more sophisticated than any other small business person. I think it's certainly an interest that could be drawn, but the clause even specifically highlights the variable interest rate section. Well, the variable interest rate section does not mention the 365, 360 language. If you turn to the variable interest rate section of this note, it actually states that the initial rate will be 8 percent per annum. The normal understanding of per annum as defined in Black's Law and as used by business people all the time is per year. How is a year computed? The year computed is statutorily under Section 10 of the Interest Act and Section 16 of the Promissory Note Act. A year is 12 calendar months. A year is a year. The distinction that this Court drew in Asset Exchange was that the phrase a year of 360 days redefines the term year for all purposes in the note. There's no indication in that sentence or anywhere else in the note that that's what occurred. There's no way that my client reading that would have determined that that's what that meant. Wouldn't that draw one's attention in a note when you saw it was computed on 360 versus 365? Ultimately, Your Honor, it doesn't matter how the interest is calculated as long as it comes to what the client was initially promised, which was 8 percent per year. Well, what's the reason for having that in there? It allows you to find the daily factor. You can figure out how much interest is charged per day. You can still use a 365, 360 calculation method. It's legal. Correct. As long as it's accurately defined and stated in the note. In this case, that's not what we have here. That's where the distinction between RBS and between Shelborn is. So you're really claiming that there was an oral agreement between your client and the athlete that the interest rate would be calculated as the 8 percent for a full 365-day year, yet the language in the agreement says 365 slash 360. Well, there's both the oral promise, which is what induced my client to sign the note, but also, in our position, the note's language itself compels that result, that it is 8 percent per calendar year. What do you and what did your client think the 365 slash 360 meant? Just as Connors asked, wouldn't that immediately draw your attention to the fact that there's a difference in the number of days? I mean, wouldn't you wonder what that meant, whether you were sophisticated or unsophisticated? It's the kind of thing that you'd want to know before you signed the note. Your Honor, as we pointed out on page 20 and the preceding pages of our brief, you can use the 365-360 method and still come out at 8 percent for a calendar year. The fact that that language is included does not necessarily mean that my client would be charged more than 8 percent. That was the decision of the way the bank calculated the interest. Specifically, they used 8 percent as the second annual interest rate, where they could have used a lower number. There's no – they could have used – They didn't say that in the agreement. What you just said. If I looked at the agreement, where would it say that? Your Honor, it – what it says is that the initial rate will be 8 percent per annum, which – that's the initial rate. That's what it says at the heading. And you can calculate and get to that 8 percent number still using the 365-360 language. Because of the inaccuracy and the inconsistency and the unintelligible way this 365-360 provision was drafted in this note, because of that, there's an ambiguity as to whether or not my client would be charged a higher rate of interest, more than 8 percent, or whether they would be – whether 365-360 would be used and my client would be charged 8 percent following that calculation. Counselor, asset exchange was determined – was decided recently. You're familiar with that case. Yes, I am. Now, for us to agree with you, we'd have to disagree with the finding in assets exchange. To a certain degree, yes. Your Honor, the asset exchange decision did not address the internal ambiguity and inconsistency of the 365-360 language. It addressed the ambiguity between 365-360 and per annum generally. It did not – it did not take a look at the actual specific annual interest rate language and determine whether or not the fact that the bank drafted a note where you have an unintelligible provision, where if you convert this to a mathematical equation, which is the only thing you could do to compute annual interest. But those same arguments were made in the assets exchange case as well. I mean, we have to give these things a reasonable interpretation, do we not? Absolutely. And there are three – at least three reasonable interpretations of how the 365-360 language could be interpreted in this case. The one you put in your brief, is that reasonable? There's – we put all three in our brief. I know, the one that was outrageous. I can't remember the numbers. No, that – there's actually – there's the 50 – 519,000 percent. We would suggest that that's not reasonable. But that's the actual language. If you're trying to say that this provision is looking for the annual interest rate, that's the number you would come up with. The interest act was amended in 2010, retroactively, I suggest, to cover just this type of situation. Was it not? Your Honor, it was not. The amendment to the – Did you say it was not? It was amended, but I don't think that the amendment went so far as to give credence to this particular situation. The amendment just altered section 4 of the Illinois Interest Act, did not change sections 9 or 10. And what it – what it said is that it's permissible to calculate interest on a 360-day year. We have never, at any point during the trial court or during our briefing here, suggested that it's illegal as a matter of law to charge interest on a 360-day year. What we're saying is that the way they did it in this case, with this language, was incorrect and inappropriate. Based on the oral representations that they have allegedly made to your client. Isn't that the other part of the sentence that you're trying to say? And I don't know what the court's supposed to do with that. You know, you have to look at the document, counsel. You know, there's – we have to write something when we write an opinion. It has to be based on the record before us and what's in the documents. And I asked you earlier, where in your document, or where in the square corners of that contract, does it say what you are arguing it says? It says it both in the heading, where it says initial rate 8 percent. It says it both in the variable interest rate provision, which follows the 365-360 language. What does it say? Tell me in your own words what it is that you think it says that supports your argument. The variable interest rate provision, and I'll actually read from it directly, says that the index is currently 7.500 percent per annum. The interest rate to be applied to the unpaid principal balance of this note will be at a rate of 0.500 percentage points over the index, resulting in an initial rate of 8.000 percent per annum. What that – a reasonable interpretation of that is utilizing the 365-360 method, you still – I am still going to be charging an initial per annum, per calendar year rate of 8 percent. That's what the heading says. And regardless of what – in addition to what the oral promises were to induce my client into this. But it was also put in the note because it didn't say at the top that we're charging you more. It didn't have any place in here. The only suggestion that the bank can point to is that the payment provision, which contains the 365-360 language, which will submit to you if you convert to a mathematical equation, which is what you would be asking my client to do at a closing or at any point prior to it, you can't come up with a figure. It's impossible to do so unless you alter the terms. As soon as you do that, that – as soon as you decide which terms or my client decides which terms to change, he may be changing different terms than the bank wanted to. And so therefore, there's an ambiguity. We should be allowed at – especially on a motion to dismiss stage, we should have been allowed to engage in discovery and present extrinsic evidence of the intent of the parties. Counsel, what about Section 4 of the Interest Act applying to corporations? Section 4 of the Interest Act, what it highlights is Section 4 does not apply. What it specifically says is that you may collect interest at any rate on a commercial loan. We've never suggested that you couldn't. What our position is is that Sections 9 and 10 still apply. Section 4, the Illinois General Assembly has routinely and throughout its history shown the ability to exempt certain conduct from the application of an act. It will say specifically, this act does not apply. For example, the Sales Finance Agency Act, where it says, this act does not apply to any credit union, bank, or banking association. Similarly, the Consumer Installment Loan Act, this act does not apply to business loans. The legislature had – the General Assembly had the ability to make a wholesale exemption in Section 4. It did not do so. Sections 9 and 10 address a different concern. Section 9 specifically addresses a concern exactly what happens at the initial – at the heading of this note. You have an interest rate mentioned. There's no time period stated on which it to be calculated. So the legislature, the General Assembly, over 100 years ago said, when that situation arises, you insert per annum or by the year. Isn't that kind of a gap filler situation, as they call it? Well, and there is a gap at the heading of this note. At the heading of this note, there is a gap in that the initial rate does not say over what time period that's stated. In this situation, you would insert per annum at the heading. Well, let me ask you this. If the first clause in the note had stated the interest rate will be computed using the 365-360 method, would that have been enough to satisfy your argument? I apologize. Did you say the annual interest rate shall be computed? The interest rate. Well, the interest rate, again, if it's used and it just says the 365-360 method, that could potentially suffice. But that's not what we have in this situation. I'm just asking you a hypothetical because your argument is really, you make some pretty sophisticated, if not convoluted arguments. And I think that the facts of this case are not as complicated as they may seem at first glance. And this promissory note is really pretty short as far as promissory notes go and fairly straightforward. So I am looking hard to try to find the ambiguity that you are asserting is here. And I'm having some trouble actually telling you. The ambiguity, Your Honor, is found in the 365-360 language itself. The way it is written in this note, the way the bank drafted it, it doesn't make sense for what our client would be asked to do to try and determine what rate of interest he would be charged on a calendar year. That's not what it does. You can't solve it. Even if you were to determine that if it was just the 365-360 method and that's all it said is that interest rate shall be computed on a 365-360, again, that still leaves the question of does that mean that my initial rate after using 365-360 is 8% per year or is that what is used on a 365-360 method to arrive at a higher percentage rate? That question would still be left open in your hypothetical. It comes down to the last five days, right? That's what this is about. It's about trying to say that the banks were charging 8% interest. If they charged it at 360 days, there's five days left. And at five days left, rather than give them an interest holiday, the borrower, they have to pay, continue to pay, those last five days at an 8% interest rate, which according to your calculations, which are not denied by the other side, raises the rate to 0.11%. So one-ninth of 1% is added then under a 365-day calendar. Why is it then, going back to my earlier question about Sections 4, the amendments to Section 4 of the Interest Act from 2010, quoting, a rate or amount of interest may be lawfully computed when applying the ratio of the annual interest rate over a year based on 360 days. Doesn't that exactly say that banks or large companies, anybody who loans out money, can indeed charge interest for a year on 360 days with five days to go without giving a holiday? They get the additional five days of interest. They can if it's still disclosed and put properly in the note. In this case, it wasn't. In this case, the language here was not. Regardless of the fact that the language here does not clearly state that. The language here If your entire argument relies on the ambiguity of it, let's move on. Moving on to the amendment of Section 4, that was completed after this note was entered into. While, granted, the legislature indicated that it was a clarification of existing law, the amendment specifically references two provisions of Section 4 in its language. It says that under specific types of notes that you could calculate interest on a 360-day year. There was no language to that effect or suggestion of that effect anywhere else in the Interest Act as it existed. It would be our position that that and it would be our position based on the Perlman decision out of the First District in 1972 that found that a year means a year in both commercial purposes and others. While it did not specifically find a 365, 360 provision was inapplicable, it found that a year meant a year for commercial purposes and otherwise. It would be our position that any retroactive application of that amendment would be improper. It would be Given 38 years later. It was written in stone, so what the Fifth District does or the First District writes 38 years later, the legislature cannot underwrite on the interest rate. They can't retroactively. Going forward, they could. From 2010 forward, that amendment would have effect. But it cannot go back, reach back in time to the note in 2006 when this was entered and change the terms and the law at the time that this was entered into. And that's what would have to happen for Section 4 to bar my client's claims, is that the legislature in 2010 would go back to 2006 and change the law that existed at the time. Well, again, I couldn't disagree with you on that. In a recall in the most recent period, and it comes back to a very old case, talks about this and we found the LASMB 2010 case talks about that. Illinois Supreme Court says they can do exactly this unless it's unconstitutional. And so you're arguing now that it's unconstitutional for the state legislature to change the Interest Act except going forward. Well, with regard to the definition of a year and the application of a year, yes, because of the Perlman decision that existed in 72, that was written at the time and that was the settled expectation of the parties at the time they entered into the note in 2006, is that they believed the law as it existed at the time applied. Reading from Henry Cohn, an old case from the Supreme Court. We believe the legislature's attempt to retroactively alter a reviewing court's interpretation of the statute, blah, blah, blah, blah. So you're suggesting that in 2010 the Illinois legislature went forward based on your case, the Perlman case, that it's been languishing for 38 years. I don't like the Perlman case. Let's reverse the Perlman case here in 2010. We're a little late, but better late than never. That's what it was done. The 2010 amendment was done to get around a 1972 decision. I think that that's the effect of it. Whether that was the legislature's intent in doing so, that was the effect of it, is that, yes, it would reverse the Perlman decision because the Perlman. Aren't they allowed to do that after a length of time? As long as the law is still settled, they would be able to change it, but going forward. Not retroactively and change the settled expectations of my client. Anything else? If there are no other questions at this time. You'll have time for your questions. Thank you. Mr. Hardy. May I please the court? I'm going to keep my remarks brief, and then I'll certainly be happy to take the panel's questions. But I'd first like to discuss some of the things that have happened in the years since the notice of appeal in this case was filed. And this panel has talked about them with respect to Mr. Foucault's argument. First, we have the asset exchange case, which the opinion was issued a few months ago, in fact, by this same division of this court authored by Justice Connors. And that case actually, I don't think it was brought out just a moment ago, but that case actually involved a note containing an interest calculation provision that is identical in every way to the provision that's in the note in this case. And, in fact, the note itself, aside from that provision, was very similar to this note as well. It included at the very top a statement that the interest rate was 8-point-something percent without stating a per annum or any other basis. Just as in this case, it says 8-point-0-0 percent at the very top of the note. A very similar note, and on those facts, with that provision, this court found that that note does not violate the Interest Act and, more importantly, is not ambiguous. That even with interest rates on either side of the equal sign, that that is not an ambiguous term of the contract. I think the other thing that the Asset Exchange did that I'd like to address is made very clear that Section 4 of the Interest Act, in fact, when it excludes its application to business corporations and other business entities, in fact, applies broadly to all sections of the Interest Act, including Sections 9 and 10, which were directly at issue in Asset Exchange. This court, in quoting that opinion, says that we find no authority in plaintiff's cites to none that refutes our earlier statement that the Illinois Interest Act as a whole does not apply to transactions involving corporations. And the court there was, you know, actually addressing a claim that is almost identical to the claim in this case, that Sections 9 and 10 and Section 4 cannot be read together. And this is even more obvious now that there is the amendment to the Interest Act that Justice Quinn just discussed, which retroactively or in a clarifying manner clarified the intent of the legislature in passing the Interest Act. And I think from Asset Exchange to that amendment you can see that the provisions of Section 4 of the Interest Act must be read in conjunction with all the other provisions of that act, including the amended clarifying provision that is Paragraph 5 of Section 4, in which specifically states that the 365 over 360 basis does not violate the Interest Act. And as a result, I think that sort of takes off the table the notion that the very use of that calculation method violates the Interest Act. Now, set that aside, and there's still the issue that plaintiffs address that notwithstanding what the Interest Act says, the terms of the note are ambiguous in some manner. And as I said, Asset Exchange, I think, addresses that head-on because it involved, in fact, the exact same provision and the exact same claims made regarding that provision. And found expressly that that was not an ambiguous provision. I think that the fact that it's not ambiguous is proven, I think, because by what Justice Cunningham said were the convoluted means by which the plaintiffs have to make it mean something else. As you stated, though, there were three things that they said it could mean. One was, I think as they put it, absurd and produced a 500,000 percent interest rate. The other actually produced an interest rate below 8 percent, somewhere in the 7.8 range. And it's hard to account for that if the stated interest rate was supposed to be 8 percent per annum. So neither of those interpretations of the clause really is a reasonable interpretation. And that's the standard that I think we both agree. The plaintiffs actually cite in their brief that the standard for determining whether a clause is ambiguous is whether it's susceptible to more than one reasonable interpretation. And I would submit that there is no other interpretation. I think if you like the Court's ruling on Asset Exchange, you think we ought to just go with that. I think that sums up my points fairly well, Your Honor. And I'm happy to address any other points. I know that Your Honor also pointed out that, you know, the fact that a lot of these allegations, because of what the note actually says expressly, seem to rely on verbal contract or verbal agreements. And as we argue in our brief, that actually violates the Correct Agreements Act, Section 2. And so I think those arguments all compel the result that this case, the trial court's decision in this case should be upheld and affirmed. Counsel, let me just ask you. Yes. The use of the term per annum or yearly, does that somehow change the original 360 slash 365 if contained in a note, just the use of those words? If contained anywhere in a note, I don't believe it does. I think actually the case RTG Oklahoma v. RBS Citizens actually addressed that particular point because in that case there was, in fact, a mention of the term per annum somewhere elsewhere in the note than in the payment provision or in the provision that contained the interest calculation method. And the court in that case said that you don't just read that, you know, you read those provisions separately. You know, one governs the calculation of interest. One governs something else. So just the fact that there's mention of the word per annum somewhere in the note itself does not mean that all provisions of the note have to comply with Sections 9 and 10 of the Interest Act. Thank you. Unless the Court has any further questions, I would just respectfully request that the judgment of the trial court be affirmed. Thank you. Mr. Cook is very, very briefly. Thank you. I wanted to address two points regarding the asset exchange opinion and its interpretation of Sections 9 and 10 of the Illinois Interest Act and their application. Specifically, the portion just quoted by opposing counsel that there's no citation to any authority that those provisions still apply. Section 4, as I stated earlier, Section 4 does not contain the wholesale exemption that the General Assembly has used in other statutes. And specifically, if you look at the language of Section 9, it says whenever in any statute, public or private instrument, whatever, it's any private instrument. It's not only ones that are not exempted under Section 4. Similarly, in Section 10, it states in all computations of time and of interest and discounts, a month shall be considered to mean a calendar month and a year shall consist of 12 calendar months. That is in all computations of time, not only in situations that are exempted in Section 4. Specifically, Section 10 has an analogous provision in the Illinois Promissory Note Act where it's the exact same thing and there are no exceptions to that statute. Under just Section 10, the meaning of a year is a year. It's 12 calendar months. That's what per annum meant. That's what my client understood per annum to mean. And the confusing 365, 360 language as written in this note does not compel an alternative result. It should be allowed. The trial court's decision dismissing our claim should be reversed or mandated with our opportunity to engage in discovery and for ultimate trial on the merits. Thank you. Thank you. This case will be taken under advisement.